### HAIR v. GOLDSMITH.

1. The right of dower is by operation of law, and beyond the control of the husband; but he may give property to his wife by will upon condition that she surrender her claim of dower, in which case she is put to her election between the legacy or devise and the dower.

2. The right of dower is a legal right, and a devise to the widow cannot be held to be in lieu and bar of dower, unless so declared, or unless manifestly repugnant to a claim of dower.

3. A testator, seized and possessed of 361 acres of land, bequeathed specifically some goods of little value, $500 in lieu of administrator's commissions, and to his grandchildren C., a note on their father, and devised four-tenths in value of his lands to his widow for life, with remainder to their daughter A., and to his grandchildren B. and C. three-tenths each, and named persons to make such division of his lands. *Held*, that the provision for the widow was intended to be in lieu and bar of dower. MR. JUSTICE McIVER dissenting.

4. The widow having, under her hand and seal, elected to take the devise to her under this will, she cannot claim dower in the lands assigned to B. and C., notwithstanding she made such election very soon after her husband's death—there being no imposition, misrepresentation, nor persuasion practised upon her.

Before PRESSLEY, J., Newberry, November, 1884.

This was a petition by Rosannah C. Hair against Harriet S. Goldsmith and others. The opinion states the case.

*Messrs. Jones & Jones,* for petitioner.

*Mr. Y. J. Pope,* contra.

April 22, 1885. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. Peter Hair, late of Greenville County, died on September 26, 1882, leaving of force a last will and testament. At the time of his death he was seized and possessed of certain real estate situate in Newberry County. Of this real estate, he devised four-tenths to his wife, the plaintiff, for life, with remainder in fee to his daughter, Hattie S. Manly, three-tenths to the children of his son, John Hair, and three-tenths to the children of his daughter, Mrs. Goldsmith. His son-in law, William Goldsmith, administered with the will annexed.

On October 26, 1882, just a month after the death of testator, the plaintiff executed a receipt, of which the following is a copy: "I hereby acknowledge that I have received from William Goldsmith, administrator with the will annexed of the estate of Peter Hair, deceased, the four-tenths of the real estate of said deceased devised to me under the will of the said deceased, and of which he died seized and possessed. Witness my hand and seal this 26th of October, A. D. 1882. (Signed) R. C. Hair. (Seal.) In presence of (signed) A. J. Kilgore, M. C. Kilgore." On the same day, at the solicitation and request of her friend, A. J. Kilgore (who, it seems, told her that it would be carrying out his uncle's will), she signed a paper, of which the following is a copy, which was presented to her by the said Kilgore: "I hereby acknowledge that I have received from William Goldsmith, administrator with the will annexed of the estate of Peter Hair, deceased, the four-tenths of the real estate of said deceased for and during my natural life; and I hereby accept the same in lieu of all claim of dower in the real estate of said deceased and of which he died seized and possessed. Witness my hand and seal this 26th of October, 1882. (Signed) R. C. Hair. (Seal.) In the presence of (signed) A. J. Kilgore, M. C. Kilgore."

Some time the next year, *i. e.*, 1883 (the precise time is not stated in the "Case," nor are there any dates to the initiation papers), she filed a petition in the Court of Probate for Newberry County, demanding dower in the said real estate. The defendants, some of whom were minors, answered (the minors by guardian *ad litem*), denying her right to dower both under the terms of the will and because of the receipts above mentioned which they set up in bar. The probate judge, after taking testimony and hearing argument, held that while the terms of the will did not exclude her from the claim of dower, yet having expressly accepted the devise thereunder in bar of dower in the lands devised to the other devisees, she was precluded from now claiming it. He therefore dismissed the petition, with costs and disbursements against the plaintiff.

From this decree of the probate judge an appeal was taken to the Court of Common Pleas, which came up before his honor, Judge Pressley, who, holding that the second instrument above was based upon a valuable consideration and in the nature of a family settlement, decided that the plea of mistake could not avail, and he adjudged that the appeal should be dismissed with costs to the defendants, with directions that his judgment be certified to the court below.

The case is now before us upon appeal by both plaintiff and defendants. The defendants contend that the judgment below may be sustained on the ground that the devise to the plaintiff in the will was intended to be in lieu and bar of dower; and that the plaintiff having elected to take the devise, and having received it, she was now barred, and that the Circuit judge should have so held. The plaintiff, contesting this proposition of the defendants, has excepted to the ruling of his honor, Judge Pressley, in that he erred in holding that the second receipt above was a bar to the claim of dower—the plaintiff alleging that said receipt was without consideration; that the release therein was to no one; that it was executed before the dower had been laid off; that the plaintiff did not understand her rights at the time, but one month having elapsed since the death of her husband and before she had an opportunity to consult her attorneys, and be-

cause her friend, A. J. Kilgore, had advised that she could not claim the devise and the dower both.

It has been often said that the right to dower is a highly favored claim, and under the influence of this principle the courts have been slow to defeat such a claim. It is not meant, however, by this that the allowance of dower is dependent upon the favor or kind disposition of the courts merely. On the contrary, this right is as much governed by established rules and principles as any other. The difficulty arises when these rules and principles come to be practically applied to the facts of a special case. For instance, it has been well established that when a widow of a deceased testator has been bequeathed or devised a legacy or devise in the will, this does not affect her right to dower in the lands of her deceased husband unless such claim is in opposition to the declared intentions of the testator, or is in such manifest repugnancy to the will that the two cannot stand together.

These are plain enough as general rules, but when the question is presented whether the provisions of a certain will are manifestly repugnant to the claim of dower, neither the text-books nor the decided cases afford any positive and definite test. And after full examination of these authorities, it will be seen that the question at last must depend upon the intention of the testator, to be ascertained by the ordinary rules of construction and interpretation, and especially whether the devise and dower are repugnant, each case turning upon its own facts and circumstances.

Now, what is precisely the character of the case at bar? The testator died seized and possessed of considerable real estate. He left surviving him his widow, two children, and several grandchildren, the children of a deceased daughter. In his will he devised four-tenths of this real estate to his widow for life, with remainder to his and her daughter, H. S. Manly, in fee, three-tenths to the children of his son, John Hair, and the remaining three-tenths to his grandchildren, the children of Mrs. Goldsmith, deceased. There is no express declaration in the will that the devise to his wife was in lieu and bar of dower; the question then is presented, did the testator intend this devise as such bar? This must be determined by the fact whether the two are so

manifestly repugnant that they cannot stand together. This being determined, the intention of the testator is reached and must govern.

It must be remembered in considering this question, first, that dower is a right to which a widow becomes entitled on the death of her husband, not by any gift, contract, or indulgence of her husband, but by operation of law, which is fixed at his death, and over which he has no control, and cannot defeat. Second. That while this is true, yet the husband may bequeath and devise his entire estate to whomsoever he pleases, and upon such conditions as he may choose. There is nothing, therefore, illegal in his annexing, either expressly or by implication, a condition to a bequest or devise to his widow, that she shall surrender her claim to dower. In such case the widow is put to her election, and if she accepts the devise or bequest, she loses her dower, not by the act of her husband, but by her own voluntary choice and surrender. So that although the right to dower is favored by all the courts, yet it is no violation of this principle to hold that she cannot claim it, and also another right which was given her on the condition that she should surrender her dower.

Now, is the devise to the plaintiff in the will in question so manifestly repugnant to her claim of dower as to show that it could not have been the intention of the testator that the two should stand together? At the death of the testator he was seized in fee of the real estate mentioned, subject to a life estate of his widow in one-third thereof as her dower, which inchoate before his death became consummated and vested by his death. The will directed that this real estate should be divided into three parts : one, four-tenths; the remainder into two, three-tenths each: and the persons to make this division were nominated therein, and it was evidently contemplated by the testator that this division should be made as early as the condition of the estate would allow. The testator left two surviving children and the children of a deceased daughter. The scheme of the will was evidently to make an equal division among these, the children of his son, John Hair, representing one share, and the children of Mrs. Goldsmith, deceased, representing their mother in one share; and inasmuch as the share of his daughter, H. S.

Manly, was to be encumbered with the life estate of her mother, he gave to her four-tenths, which was one-tenth more than he gave to the other two.

Now, would it not be manifestly against this scheme if the widow was allowed to come in and claim a life estate in each of the three-tenths, in addition to a life estate in the four-tenths, which is directly devised to her? How could a claim of this kind be practically enforced without breaking up the entire scheme? The land was in two tracts, one containing 167 acres, and the other 194 acres, in all 361 acres. Divide this into three portions—one, four-tenths; the other two, three-tenths each, and we have one, $144\frac{1}{2}$, and two, $108\frac{1}{3}$. Set apart to the widow for life the $144\frac{1}{2}$ acre tract under the will, and give her one-third for life in each of the other two as dower, and the scheme of the division directed in the will is destroyed; and especially if the widow's dower in the two three-tenths should be assigned to her out of one of them—and who could say that it should not?

The share of H. S. Manly was subjected to a life estate therein of her mother, and therefore the testator gave her four-tenths, which was one-tenth more than the shares of the others; but after making this difference so as, no doubt, to make the shares as nearly equal as possible, he could have hardly intended that the shares of the others should also be subject to a life estate of his widow to the extent of one-third each as dower, because this would have destroyed the equality among his children, and not only so, but would have postponed the division and enjoyment of the devises until the death of his widow, when the dower would fall in—which would manifestly contravene his intent. The testator evidently intended that the whole of his lands of which he was seized should ultimately belong to his children and grandchildren, in equal parts, and he desired an immediate division, but he knew that his wife was entitled to a life estate in one-third as dower, which, if she claimed in the whole, would defeat an immediate division. He therefore gave her a life estate in four-tenths, which was a little more than her dower in the whole, and then to make her daughter, Mrs. Manly, about equal with the others, he gave her this four-tenths at the termi-

nation of her mother's life estate. For the widow now to claim the four-tenths for life and dower too in the remainder, we think would be manifestly repugnant to the scheme of the will.

In our case of *Bailey* v. *Boyce* (4 *Strob. Eq.*, 84), the general principle which should control in cases of this kind is laid down as herein above; and it is sustained by many cases, both English and our own, cited in the opinion of the court and the Circuit opinion of Chancellor Dargan, as also in his elaborate dissenting opinion. The difference, however, in the court was not so much as to the general principle, but in its application to the facts of that case. It was conceded that in all such cases the intention of the testator was the controlling factor, and that this intention was to be reached by the fact whether or not the devise and the claim of dower were manifestly repugnant.

Now, the widow has accepted the provision made for her in the will. True, this acceptance seems to have been brought about in some haste, one short month only having intervened between it and the death of her husband, but neither the probate judge nor the Circuit judge have found as matter of fact that she was in any way imposed upon in executing this receipt and in accepting the devise. The receipt has not been impeached by any direct proceeding. Nor does it appear that any advantage was taken of her through the persuasion or misrepresentation of any of the parties. The only testimony upon that subject is her own, in which she states that she did not understand the true condition of the estate, and that she would not have accepted if time had been given her to consider and to consult with her attorneys. Whose fault was it that deprived her of time and opportunity for consultation? Her own, as far as we can see. Besides, from the view which we have taken, inasmuch as she could not have claimed both the devise and the dower, even if she had taken time, she no doubt would have still accepted the devise, as by that she gets a life estate in four-tenths, which is greater than would have been her dower. So that she has not shown or claimed that she has been injured by a hasty acceptance.

The acceptance, then, being inconsistent with the claim of dower, and this being sufficient to sustain the judgment below, it is unnecessary to discuss the effect of the second receipt, in which

she released all claim to dower, because whether or not that receipt is obnoxious to the objections interposed by the plaintiff can make no difference. As the case is one of election and the plaintiff having elected as evidenced by her taking possession of the property devised to her, and executing the first receipt, she cannot claim both under and against the will.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCGOWAN. I concur with the chief justice. It is true that the husband cannot defeat the wife's dower by willing all his estate to others, but he may give her of his property what he pleases as a substitute for dower, which provision the wife may take instead of dower; and where the intention is manifest that the provision was given as a substitute, she cannot take the provision and at the same time dower. She may take one or the other, but not both. I think that in most cases where a husband makes provision for his wife by will, and makes no allusion to dower, he intends such provision to be her full share of his estate including dower. The widow of course is concluded when he says expressly that the provision is in lieu and bar of dower, but he often omits to say that in express terms and the question arises whether such was his intention. And upon that subject the rule is as stated in *Gordon* v. *Stevens* (2 *Hill Ch.*, 48), "That as the right of dower is a clear legal right, an intent to exclude that right must be manifested by express words or by clear and manifest implication," &c.

Taking this as the rule, it seems to me that such implication is manifest in this case. There could be no question about it if the whole real estate had been given to the widow for life. *Shaffer* v. *Shaffer*, 16 *S. C.*, 625. If one moiety of it had been given, that would have shown such intent by implication. *Bailey* v. *Boyce*, 4 *Strob. Eq.*, 84. Then why should not the same result follow when four-tenths of it was given to her? In the case last cited the testator gave to his wife, Eliza Henry, one-half of his estate, real and personal, and the other half to his daughter, Eliza Bailey, and the court held that the wife could not have dower because it would be "inconsistent with the provisions of

the will and conflicting with the evident intent of the testator to make an equal partition of his property." Upon what principle did that case proceed? Why, manifestly upon none other than this—that a certain proportion of his whole estate was given by the testator to his wife, and to take out dower first, before ascertaining that proportion, would be inconsistent with the provisions of the will. As I understand it, this principle is entirely independent of what the proportion may be, one-half, one-third, or four-tenths. In either case, taking out the dower first would equally defeat the intention of the testator.

It does not seem to me that this view is answered by saying that the husband could not give more than he had, and that the wife's right of dower did not belong to him, and therefore he must be considered to have intended that the proportions named should be out of what remained after dower was assigned. That would certainly be a strained construction. The question is not one of power, but of intention, and, considering that the right to dower is in abeyance during the life of the husband, can it be doubted for an instant that the testator, when he spoke of his lands, meant the property itself of which he had the title and which, as understood in common parlance, was his, and was his to all intents and purposes, subject only to his wife's inchoate right of dower? He not only gave his lands to be divided in the proportions indicated, but he appointed three persons to make the division, and we cannot assume that he intended these gentlemen to divide, not his lands as stated, but two thirds interest in them after allowing the wife's dower. I can have no doubt whatever that he meant all his lands. and that being his intention it follows that to take dower out before making the division would defeat that intention and would, as said by the court in *Bailey* v. *Boyce, supra,* "be directly inconsistent with the provisions of the will."

The view is, that the testator intended to dispose, by will, of his whole property, without regard to the wife's inchoate right to dower, and giving to the wife a certain proportion of that property, implies an intention to exclude dower in it as unmistakably as if the whole of it had been given to her. I am aware that there was a long contest in the English courts, whether a wife was entitled to dower in lands upon which her husband

had charged an annuity in her favor. It seems to have been finally settled that such charge did not necessarily exclude the widow's right to dower. But the question being merely as to the intention of the testator, that case is not identical with this, where the testator devises to the wife an arithmetical proportion of the land itself. I think the provisions of this will make a case of election; and that the widow cannot take under the will and against it at the same time. She may take the provision in the will or dower, but not both.

In this view, the paper signed by the widow, after her husband's death, may be regarded as the expression of her election to take under the will.

MR. JUSTICE MCIVER, dissenting. As I cannot concur in the conclusion reached by the majority of the court, I will proceed to state, as briefly as practicable, the reasons for my dissent. But two questions are raised by this appeal. 1st. Whether the provision made in the will of Peter Hair for his widow, the petitioner, is such as, if accepted, will exclude her claim for dower. 2nd. If not, whether the paper signed by the petitioner, which will be hereinafter set forth, operates as a bar or release of her right of dower.

For a proper understanding of these questions, a brief statement of the facts will be necessary. Peter Hair being seized and possessed of two tracts of land—one containing 167 acres, and the other 194 acres—departed this life on September 26, 1882, having first duly made his last will and testament, by which he disposed of his estate as follows: To his wife, the petitioner, he gives four-tenths of all his real estate for life, and after her death he gives the same in fee to his daughter, Mrs. Hattie S. Manly; to the children of his son, J. S. Hair, he gives three-tenths of his real estate; and the remaining three-tenths to the children of his daughter, Mrs. N. C. Goldsmith, the wife of Wm. Goldsmith, with a provision that the portions which may go to his married granddaughters shall be settled to their sole and separate use. He then makes several specific bequests, viz., to his grandson, Peter Hair, his gold watch and chain; and to his grandson, Peter H. Goldsmith, his shot-gun and two fine pistols.

To the children of his daughter, Mrs. Goldsmith, he bequeaths whatever may be due to him by their father, Wm. Goldsmith; and to his daughter, Mrs. Hattie S. Manly, he gives all the residue of his estate. The will also provides for three persons designated therein to make a division of his real estate, in the proportions previously directed, amongst the several devisees named. And by a codicil to his will, he provides for the payment of $500 to the person who shall administer on his estate in lieu of all commissions and expenses, saying that his son-in-law, Wm. Goldsmith, had signified his willingness to become the administrator upon these terms.

It seems that J. S. Hair and Mrs. Goldsmith were the children of a former marriage of the testator, and that Mrs. Manly was the only child of the marriage with the petitioner. Wm. Goldsmith, having qualified as administrator with the will annexed, procured from the petitioner on October 26, 1882, just one month after the death of the testator, her signature to the following paper, which is relied upon as, and which was held by the Circuit judge to be, a release of her right of dower in all the real estate of the testator, of which he died seized, viz. :

"I hereby acknowledge that I have received from William Goldsmith, administrator with the will annexed of the estate of Peter Hair, deceased, the four-tenths of the real estate of the deceased, devised to me under the will of said deceased, for and during my natural life; and I hereby accept the same in lieu of all claim of dower in the real estate of said deceased, of which he died seized and possessed. Witness my hand and seal this 26th day of October, A. D. 1882." (Signed) "R. C. Hair. (Seal.)" "In presence of (signed) A. J. Kilgore, M. C. Kilgore."

Under this state of facts, the questions above stated will be considered.

First, as to whether the terms of the will are such as put the widow to her election of dower, or of the portion devised to her by the will. It is conceded that the rule is well settled that in order to put the widow to her election, the testator must, either in express terms or by clear and necessary implication, declare his intention that she shall not have both. It is quite certain that there is no such intention declared in express terms by the

testator in this case, and the only inquiry, therefore, is whether such intention is clearly and necessarily implied from the terms which have been used. When it is considered how easy it would have been for the testator to have expressed his intention in terms, that the provision made for the wife was intended to be in lieu of dower, which, of course, it must be assumed that he knew she had the right to claim, and when it is remembered that dower is an estate which vests in the wife immediately upon the death of the husband, over which the husband can exercise no control, either by will or otherwise, it must be conceded that when a husband makes a devise of his real estate, or any portion thereof, the presumption always is that such devise is made subject to the widow's right of dower therein, and hence the burden is upon those who seek to deprive her of such right, to show that the terms of the will are such as necessarily imply that the intention was that she should not take both her dower and the provision made for her in the will. As is said by Dargan, Ch., in his Circuit decree, in *Cunningham* v. *Shannon* (4 *Rich. Eq.*, 140), which was adopted, on this point, by the Court of Appeals: "Dower is a right which, inchoate during the coverture, becomes absolutely vested in the wife as an estate on the death of her husband, and is as much beyond his control or power of disposition as her own inheritance. It not being his to give, every devise which he makes of the land upon which the right of dower attaches is presumed to be given subject to the legal estate, unless the contrary appears on the face of the will, in express words, or by the strongest kind of implication."

It does not appear to me that the respondents have succeeded in showing that the terms of the will under consideration necessarily imply that the testator intended that the provision made for his widow should be in lieu of her claim of dower. So far as I have been able to discover, the authorities do not establish any rule by which it can be absolutely declared what particular provisions of a will necessarily imply an intention to exclude the claim of dower, but that each case must be determined for itself, upon a consideration of the terms used in the will presented for construction. It certainly cannot be said that such an intention is to be implied from the fact that if the claim of dower is allowed, the

provisions made for other objects of the testator's bounty will be reduced in amount, for that would be the result in every case, and the necessary consequence would be that dower would be excluded in every case. The case of *Bailey* v. *Boyce* (4 *Strob. Eq.*, 84), which, though decided by only two chancellors against one, less than a majority of the full court, ought properly to be considered as authority, may be regarded as establishing the doctrine that where a testator by his will divides his estate equally between his widow and his only daughter, such a provision must be regarded as necessarily implying an intention on his part to exclude the widow's claim of dower, upon the ground that such a claim, if allowed, would defeat the scheme of his will.

This case is relied upon as conclusive of the question now under consideration, for it is argued that the scheme of Hair's will was to divide his estate equally amongst the several objects of his bounty, and therefore that the doctrine established in *Bailey* v. *Boyce* should control here. But was equality the scheme of the will under consideration? It appears to me clear that it was not. On the contrary, out of all the various persons mentioned in the will as objects of the testator's bounty, only two of them (considering the children of J. S. Hair as one and the children of Mrs. Goldsmith as another) are given equal portions. To say nothing of the small specific bequests to the two grandsons who bore the testator's name, we find that the amount due to the testator by Wm. Goldsmith is given to his children, and the whole residue of the estate is given to Mrs. Manly. What was the amount of the indebtedness of Goldsmith to the testator, or what would be the probable value of the residue, does not appear, and we have no means of determining.

Even as to the real estate, I see no warrant for saying that the testator designed an equal distribution of his estate. The figures certainly do not show it, except as has been stated, as to the provision made for the two sets of grandchildren; and the suggestion that the share of Mrs. Manly was increased by one-tenth, because the enjoyment by her of her share was to be postponed until her mother's death, must be based entirely upon conjecture, as there is nothing in the terms of the will to warrant such a suggestion. The testator having burdened the whole of the por-

tion intended for his daughter with the life estate of the widow, it does not seem unreasonable that the portions intended for his grandchildren should be likewise burdened with the dower or life estate of the widow to the extent of only one-third; and this may possibly have been the reason why the portion which the daughter was ultimately to have was enlarged one-tenth; but this, too, is mere conjecture.

I have not deemed it necessary to cite the several authorities in support of the views herein advanced, as they may be found in the case of *Cunningham* v. *Shannon, supra,* though they are more fully collected and more elaborately considered in the dissenting opinion of Dargan, Ch., in *Bailey* v. *Boyce, supra.* It seems to me, therefore, that it does not appear from the terms of Peter Hair's will that the provision therein made for his widow was intended to be in lieu of her claim of dower. He has not said so, and there is nothing in the will from which such an intention is clearly and necessarily inferrible. The provision is not so large a proportion of his estate as would excite the belief that it must have been intended to be in lieu of dower. Indeed, as we are not informed as to the value of his personal estate, it is impossible for us to say what proportion is given to the widow, and the burden is on those who resist the claim of dower. It only exceeds by a very small fraction, one-fifteenth, the value of the dower in the real estate. The allowance of dower would not destroy the scheme of the will or defeat any of its provisions. The only effect would be to lessen the value of the portions given to the devisees, and that certainly is not sufficient to defeat the claim of dower. *Braxton* v. *Freeman,* 6 *Rich.,* 35.

The testator having no right to dispose of that portion of the real estate covered by the claim of dower, could only give three-tenths of his own estate subject to his disposition to his grandchildren, and not three-tenths of that which he had no right to dispose of. When he says, "I give three-tenths of my real estate to the children of Mrs. Goldsmith," he must, in the absence of anything showing a contrary intention, be regarded as meaning only three-tenths of that of which he had the right to dispose, and not as intending to include also three-tenths of that of which he did not have the right to dispose. Hence the allowance of the

claim of dower is not necessarily inconsistent with the devise of three-tenths of his real estate to the children of Mrs. Goldsmith.

The next inquiry is as to the effect of the paper signed by the petitioner, a copy of which has hereinbefore been set out. The judge of probate having found that there was no sufficient evidence to show that her signature was improperly obtained, and the Circuit judge having concurred in this finding, there is no ground upon which it can be successfully assailed as not binding on the petitioner. It will be necessary, therefore, to consider its legal effect. It will be observed that as the paper was executed after the death of the petitioner's husband, and after her estate of dower had become vested, it cannot be regarded as a renunciation of an inchoate right of dower; but if it can have the effect attributed to it, it must be as the conveyance of an estate either by way of deed or by estoppel. It certainly cannot be regarded as a legal conveyance, for there is no grantee named, and there are no conveying words used. It does not even amount to such an informal conveyance or agreement to convey as would be given effect in equity. There is no consideration expressed in it, and none given, so far as I can see, from the evidence. The allegation that it was given to enable Wm. Goldsmith, as administrator, to settle up the estate, as well as in consideration of love and affection to the grandchildren of her deceased husband, has not only no support in the testimony, but is directly contradicted in the testimony of Mrs. Hair.

Nor do I see any foundation for the idea that it was in the nature of a "family settlement." The other parties surrendered nothing, and it does not even appear that any controversy had arisen calling for such a settlement. The position that the paper was executed in order to enable the petitioner to obtain immediate possession of the portion devised to her for life cannot be sustained, for there is not only no evidence that such was the consideration moving her to sign the paper, but as matter of law she was entitled to such possession. The paper amounted to nothing more than a naked declaration by the petitioner that she accepted something which she was clearly entitled to, in lieu of something else to which, in my judgment, she was equally entitled. The other parties gave up nothing, and the most that

can be made of it is that she gave up something to which she was clearly entitled in consideration of receiving something else to which she had as good a right before as she would have after the surrender. I do not think it needs any argument or authority to show that a court of equity would never enforce such a one-sided agreement.

Nor do I think that the paper can be regarded as estopping her from asserting her claim of dower, for it does not appear that the parties claiming the benefit of such estoppel were induced by her execution of the paper to do, or omit to do, any act, or in any wise changed their position by the doing or omission of which they have sustained or might sustain any prejudice.

These views, thus hastily thrown out amidst the pressure of other official duties, compel me to withhold my concurrence in the view taken by the majority of the court.

Judgment affirmed.